UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
--------------------------------------------------------X

PENNY DOVER,

             **Plaintiff,**

   **- against -**

R.J. REYNOLDS TOBACCO COMPANY,
*individually and as successor by merger to the*
BROWN AND WILLIAMSON TOBACCO
COMPANY and the AMERICAN
TOBACCO COMPANY, PHILIP MORRIS
USA INC., LIGGET GROUP LLC, and
LORILLARD TOBACCO COMPANY,

             **Defendants.**
--------------------------------------------------------X

**OPINION AND ORDER**

**3:09-cv-11531(SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/19/14

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

      In advance of trial on individual liability and entitlement to punitive

damages, plaintiff Penny Dover and defendants R.J. Reynolds Tobacco Company,

Phillip Morris USA Inc., and Lorillard Tobacco Company have filed numerous

motions *in limine* and under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*

("*Daubert*").[1]  At a hearing on September 5, 2014, I ruled orally on a number of

these motions and later entered an Order reflecting those rulings.  This Opinion and

Order addresses the parties' remaining motions.

## I.    BACKGROUND

---

[1]     509 U.S. 579 (1993).

A.    The *Engle* Class Action and Findings

This case arises from a state class action brought in 1994 by smokers against cigarette companies seeking damages for smoking-related illnesses.[2] Following class certification, the trial court developed a three-phase trial plan.  In Phase I, the jury would decide issues common to the class, including general causation, the defendants' common liability, and entitlement to punitive damages; in Phase II, the jury would decide individual causation and damages for the class representatives and the quantum of class-wide punitive damages; and in Phase III, different juries would decide individual causation and damages for individual class members.[3]  Phase I and II were completed – in Phase I, the jury returned a verdict in favor of the class on all claims and determined that the class was entitled to punitive damages, and in Phase II the jury found that certain class representatives were entitled to compensatory damages, and awarded one hundred and forty five

---

[2]      *See R.J. Reynolds Tobacco Company v. Engle*, 672 So.2d 39, 40 (Fla. 3d DCA 1996).  The plaintiffs brought claims for strict liability in tort, fraud and misrepresentation, conspiracy to commit fraud and misrepresentation, breach of the implied warranty of merchantability and fitness, negligence, breach of express warranty, and intentional infliction of mental distress.

[3]      *See Philip Morris USA, Inc. v. Douglas*, 110 So. 3d 419, 422 (Fla. 2013) ("*Douglas*").

billion dollars in class-wide punitive damages.[4]

On appeal, the Florida Supreme Court decertified the class "because individualized issues such as legal causation, comparative fault, and damages predominate."[5] The *Engle* court also reversed the class-wide punitive damages award. Significantly, however, *Engle* held that

> the following Phase I findings are entitled to res judicata effect: (i) that smoking cigarettes causes certain named diseases including COPD and lung cancer [including adenocarinoma]; (ii) that nicotine in cigarettes is addictive; (iii) that the *Engle* defendants placed cigarettes on the market that were defective and unreasonably dangerous; (iv) that the *Engle* defendants concealed or omitted material information not otherwise known or available knowing that the material was false or misleading or failed to disclose a material fact concerning the health effects or addictive nature of smoking cigarettes or both; (v) that the *Engle* defendants agreed to conceal or omit information regarding the health effects of cigarettes or their addictive nature with the intention that smokers and the public would rely on this information to their detriment; (vi) that all of the *Engle* defendants sold or supplied cigarettes that were defective; (vii) that all of the *Engle* defendants sold or supplied cigarettes that, at the time of sale or supply, did not conform to representations of fact made by said defendants; and (viii) that all of the *Engle* defendants were negligent.[6]

At the same time, the Phase I findings did not have res judicata effect as to claims

---

[4]    *See Engle v. Liggett Group, Inc.*, 945 So. 2d 1246, 1256-57 (Fla. 2006) ("*Engle*").

[5]    *Id.* at 1268.

[6]    *Douglas*, 110 So. 3d at 424-25 (quotation marks, citations, and brackets omitted).

-3-

alleging either fraud and misrepresentation or civil conspiracy based on misrepresentation. This was because the findings were "inadequate to allow a subsequent jury to consider individual questions of reliance and legal cause."[7]

## B.   The Amended Complaint[8]

Plaintiff suffers from Coronary Heart Disease and Chronic Obstructive Pulmonary Disease ("COPD").[9] Relying on the Phase I findings, she "brings this action upon the limited remaining issues in dispute[:] specific causation, apportionment of damages, comparative fault, compensatory damages, entitlement to punitive damages, and punitive damages."[10] She asserts claims for

---

[7]     *Engle*, 945 So. 2d at 1255.

[8]     Plaintiff filed an Amended Complaint on October 3, 2013 (the "Amended Complaint").

[9]     *See* Amended Complaint ¶ 4.

[10]    *Id.* ¶ 99. Notably, the jury's Phase I findings in *Engle* include that

> [s]moking cigarettes causes aortic aneurysm, bladder cancer, cerebral vascular disease, cervical cancer, *chronic obstructive pulmonary disease*, *coronary heart disease*, esophageal cancer, kidney cancer, laryngeal cancer, lung cancer (specifically, *adenocarcinoma*, large cell carcinoma, small cell carcinoma, and squamous cell carcinoma), complications of pregnancy, oral cavity/tongue cancer, pancreatic cancer, peripheral vascular disease, pharyngeal cancer, and stomach cancer.

*Id.* ¶ 106(a) (emphasis added). The Phase I findings also include that nicotine is addictive, defendants' products were defective and unreasonably dangerous,

strict liability, civil conspiracy to fraudulently conceal, fraudulent concealment, negligence and gross negligence, breach of express warranty, and breach of implied warranty.[11]

## II.   LEGAL STANDARD

### A.   Motions *in Limine*

The purpose of a motion *in limine* is to "enabl[e] the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial."[12] Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[13]   Under Rule 403, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger

---

defendants concealed or omitted, both individually and in tandem, material information about the health effects and addictive nature of cigarettes, and that defendants sold or supplied cigarettes that did not conform to factual representations they made about those cigarettes. *See id.* ¶¶ 106(b)-(g).

[11]    *See id.* ¶¶ 115-139.

[12]    *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). *Accord Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984) (stating that the purpose of motions *in limine* are to allow a court to rule on the admissibility of potential evidence in advance of trial).

[13]    Fed. R. Evid. 401.   Under Rule 402, irrelevant evidence is inadmissible.

of unfair prejudice, confusion of issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." A court will exclude evidence on a motion *in limine* only if it is clear that the evidence is inadmissible on all potential grounds. Accordingly, courts may reserve judgment on motions *in limine* until trial, and any ruling on such a motion is subject to change in the court's discretion as the case unfolds.

### B. Federal Rule of Evidence 702 and *Daubert*

*Daubert* and Federal Rule of Evidence 702 "plainly contemplate[ ] that the district court will serve as a gatekeeper to the admission of scientific testimony."[14] In determining the admissibility of expert testimony, courts in the Eleventh Circuit consider whether:

> (1) [T]he expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.[15]

To be admissible, the proposed expert testimony must be based "on a reliable

---

[14]    *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340 (11th Cir. 2003).

[15]    *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert*, 509 U.S. at 589).

foundation."[16]  In assessing reliability, the trial judge should consider whether:

> (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has reliably applied the principles and methods to the facts of the case.[17]

Finally, trial courts must consider only the *admissibility* of expert evidence rather than its weight or credibility.  As the Supreme Court has explained, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[18]

## III.   DISCUSSION

### A.   Plaintiff's Motion *in Limine* Seeking to Exclude "Empty-Chair" Arguments Attributing Fault to Non-Party Cigarette Companies

Plaintiff's smoking history includes brands of cigarettes manufactured by non-parties, including Dosal Tobacco Corporation's "305" brand.  According to

---

[16]     *Daubert*, 509 U.S. at 597.  *Accord Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-49 (1999).

[17]     Fed. R. Evid. 702.

[18]     *Daubert*, 509 U.S. at 596.  *Accord Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311 (11th Cir. 1999) (stating that the district court's role under *Daubert* "is not intended to supplant the adversary system or the role of the jury"); *Rosenfeld v. Oceania Cruises*, 654 F.3d 1190, 1193 (11th Cir. 2011) (stating that the district court should not "make ultimate conclusions as to the persuasiveness of the proffered evidence") (quotation marks omitted).

-7-

defendants, plaintiff testified that she smoked 305s "on a regular basis from the 1990s [to the] present," and that she "smoked *only* these (non-party manufactured) cigarettes for at least the last 14 years."[19]  Defendants also assert that plaintiff changed her position at her deposition, claiming that she had smoked 305s for a shorter time period.[20]

Relying on the Florida Supreme Court's decision in *Fabre v. Marin*, plaintiff argues that defendants should be precluded from "attempting to place fault with non-parties whose liability has not been pled or proved."[21]  She argues that under Florida law, "a defendant's percentage of fault cannot be compared to that of a non-party unless the defendant specifically pleads the non-party's identity, pleads the non-party's negligence as an affirmative defense, and puts forth supporting evidence."[22]  According to plaintiff, "[a]rguing a non-party caused some of the

---

[19]     Defendants' Response to Plaintiff's Case-Specific Motion *in Limine* ("Def. Case-Specific Resp."), at 1 (quotation marks omitted) (emphasis in original).  Defendants also state that plaintiff's husband confirmed this testimony at his deposition, indicating that 305s were her main brand and that she had started smoking them in the 1990s. *See id.*

[20]     *See id.* at 2.

[21]     Plaintiff's Case-Specific Motions *in Limine* ("Pl. Case-Specific Mem."), at 3.

[22]     *Id.* (citing *Nash v. Wells Fargo Guard Servs., Inc.*, 678 So. 2d 1262, 1264 (Fla. 1996) ("*Nash*"); *Fabre v. Marin*, 623 So. 2d 1182, 1185 (Fla. 1993) ("*Fabre*"), *receded from on other grounds*, *Wells v. Tallahassee Mem'l Reg'l Med.*

plaintiff's injury without actually pleading or demonstrating that non-party's

negligence is a form of the highly prejudicial 'empty chair' defense not permitted

under Florida law."[23]

However, the *Fabre* rule only applies when a defendant is seeking to

apportion fault by establishing the comparative negligence of a non-party.[24] It does

not prohibit a defendant from arguing that the conduct of a non-party is the

proximate cause of plaintiff's injuries.[25] As a consequence of *Engle*, it is plaintiff's

---

*Ctr., Inc.*, 659 So.2d 249, 254 (Fla. 1995)).

[23]    *Id.*

[24]    The *Fabre* defense was born out of judicial disagreement over the interpretation of a then-newly enacted comparative negligence statute. *See, e.g.*, *Allied-Signal, Inc. v. Fox*, 623 So. 2d 1180, 1182 (Fla. 1993) ("In *Fabre* we adopted the rationale of *Messmer* [*v. Teacher's Ins. Co.*, 588 So. 2d 610 (Fla. 5th DCA 1991)], holding that section 768.81(3), Florida Statutes (1989), requires that liability be apportioned to all participants in an accident in order to determine a defendant's percentage of fault."). In relevant part, the statute provides that "[i]n a negligence action, the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability." Florida's Supreme Court later made clear that because a *Fabre* defense is an affirmative defense, it had to be plead and proven before the issue of the non-party's comparative negligence could be included on the verdict sheet. *See Nash*, 678 So. 2d at 1264.

[25]    *See Pearson v. Royal Caribbean Cruises, Ltd.*, 751 So. 2d 125, 126 (Fla. 3d DCA 2000) (citing *Clement v. Rousselle Corp.*, 372 So. 2d 1156, 1158 (Fla. 1st DCA 1979) ("A defendant who has answered with a general denial, is entitled to prove, and to argue to the jury, that the accident was due solely to the negligence of a person not party to the suit."), *cert. denied*, 383 So. 2d 1191 (Fla. 1980)); *Loureiro v. Pools by Greg, Inc.*, 698 So. 2d 1262, 1264 (Fla. 4th DCA

obligation to prove "individualized issues such as legal causation . . . ."[26]  At the

same time, defendants are entitled to rebut plaintiff's proof of causation with

evidence that she smoked non-party brands for significant periods of time.[27]  They

may also use this evidence to impeach plaintiff's credibility – but only to the extent

that her sworn statements about smoking 305s are in fact contradictory – and to

refute plaintiff's claims that the design of *defendants'* cigarettes stopped plaintiff

from quitting smoking.

### B. Defendants' Motion *in Limine* to Exclude Dr. David Burns M.D.'s Opinion that Changes in Cigarette Design Have Increased the Risk of Adenocarcinoma

Defendants seek to exclude Dr. David Burns' opinion that changes in

cigarette design have increased the risk of developing adenocarcinoma, a type of

---

1997) ("Even had the issue of non-party liability been omitted from the instructions and the verdict form, [defendant] could still have contended at trial that it was not negligent and that the negligence of others was the sole legal cause of injury."); *Reed v. Dollar General Corp.*, No. 05-cv-1440T24, 2005 WL 2062231, at *2 (M.D. Fla. Aug. 23, 2005) (stating that it is not an affirmative defense for a defendant in a negligence action to argue that plaintiff's injury resulted from someone else's negligence).

[26]    *Engle*, 945 So.2d at 1268.

[27]    *See* Def. Case-Specific Opp. at 3 (citing *Engle*-related cases in which evidence of a plaintiff's use of cigarettes manufactured by a non-party was permitted).

lung cancer.[28]  They contend that Dr. Burns' opinion is not relevant because

plaintiff does not seek damages for injuries related to adenocarcinoma or any other

form of cancer.  Plaintiff argues that Dr. Burns' testimony is relevant to

comparative fault, fraud and conspiracy, and punitive damages.

      With respect to comparative fault,[29] plaintiff argues that the testimony

is relevant because defendants' "negligent conduct contributed to [her] multiple

smoking-related diseases, and the jury should be allowed to consider it in

determining any allocation of fault."[30]  She also argues that Dr. Burns' opinion is

necessary to rebut defendants' contention that she was and is aware of the risks of

smoking.[31]  In this regard, she states that "she could not have known all of the risks

of smoking, because critical information regarding the increased risk of smoking

was not available until long after she became addicted and suffered irreparable

---

[28]    *See* Defendants' Case-Specific Motions *in Limine* ("Def. Case-Specific Mem."), at 1-2.

[29]    *See Hoffman v. Jones*, 280 So.2d 431, 439 (Fla. 1973) (stating that comparative fault "allow[s] a jury to apportion fault as it sees fit between negligent parties whose negligence was part of the legal and proximate cause of any loss or injury; and . . . apportions the total damages resulting from the loss or injury according to the proportionate fault of each party").

[30]    Plaintiff's Opposition to Defendants' Case-Specific Motions in Limine ("Pl. Case-Specific Opp."), at 2.

[31]    *See id.*

-11-

harm."[32]  With respect to the fraud and conspiracy claims and punitive damages,

plaintiff argues that even as defendants claimed over a fifty-year period that they

were cooperating with public health authorities, they were "conceal[ing] from both

the government and from smokers, . . .[like herself], that filters and other design

changes were making their products more dangerous, not less."[33]

        In making these arguments, plaintiff ignores defendants' specific

objection – which concerns Dr. Burns' theory about the relationship between

cigarette design and the increased risk of adenocarcinoma – and focuses on

defendants' conduct over a fifty-year period in concealing the overall risks

associated with their products.[34]  However, defendants deny that they, or anyone

else, were aware of the specific design defect related to adenocarcinoma at the time

the designs were implemented, plaintiff first started using cigarettes, or when she

became addicted to them, and plaintiff does not suggest otherwise.[35]  This is

---

[32]      *Id.* at 3.

[33]      *Id.* (stating that plaintiff "will argue that she relied to her detriment on
this concealment and conspiracy – both in continuing to smoke and in purchasing
cigarettes with filters and those marketed as delivering 'lower tar[,]'" and that if
defendants "had been honest about the true risks of their products – including the
*increased* risk of developing certain cancers – Mrs. Dover could have made an
informed choice and avoided her injuries") (emphasis in original).

[34]      *See id.* at 1.

[35]      *See* Def. Case-Specific Mem. at 3-4.

-12-

because, Dr. Burns' "theory is *new*" having been "first articulated and relied on by him . . . within the last year" as reflected in the 2014 Surgeon General's Report on the health consequences of smoking.[36]

      Accordingly, I find that based on the current record, plaintiff has not established that Dr. Burns' opinion as to cigarette design and the increased risk of adenocarcinoma is relevant to notice or the defendants' failure to act based on that notice. For this same reason, the testimony is not relevant to her claim for punitive damages, which requires convincing evidence that defendants "had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damages to the claim would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage."[37]

      Dr. Burns' opinion is not relevant to plaintiff's strict liability claim for the additional reason that she does not suffer from any form of lung cancer, and under Florida Law strict liability claims require proof of a "proximate causal connection between [the defective] condition and the user's injuries or damages."[38]

---

[36]     *Id.* (emphasis in original); *see* 7/1/14 Burns Deposition, Ex. B to Case-Specific Mem., at 292 (indicating that the link between cigarette design and increased risk of adenocarcinoma was based on studies published after the 2010 Surgeon General's Report on smoking).

[37]     Fla. Stat. § 768.72(2)(a).

[38]     *West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 87 (Fla. 1976).

And the suggestion that if plaintiff had only known about the *increased risk* of this

*particular type* of lung cancer, she would not have smoked or would have quit

smoking despite her nicotine addiction, is implausible, and in any event of limited

probative value compared with the potential for prejudice or confusion of the

issues under Federal Rule of Evidence 403. In this regard, I note that the Rule 403

factors are generally applied more stringently when evaluating the admissibility of

expert testimony.[39] For example, in a case involving an *Engle* plaintiff that had

lung cancer, but not adenocarcinoma, the trial judge excluded the proposed

testimony, finding that the "probative value is fairly slight" and outweighed by

"the risk of unfair prejudice."[40] In short, plaintiff's proffer at this stage is

---

[39]     *See* Def. Case-Specific Mem. at 5 (citing *Allison*, 184 F.3d at 1310).

[40]     5/1/14 Transcript in *Starbuck v. R.J. Reynolds Tobacco Co.*, No. 09-cv-13250, Ex. G to Def. Case Specific Mem., at 35-36. As defendants note, three trial courts have granted defendants' motion to exclude Dr. Burns' testimony in *Engle* cases that did not involve lung cancer. *See* 4/30/14 Order in *Burkhart v. R.J. Reynolds Tobacco Co.*, No. 09-cv-10727 ("*Burkhart*"), Ex. D to Def. Case-Specific Mem.; 7/9/14 Transcript in *Harris v. R.J. Reynolds Tobacco Co.*, No. 09-cv-13482 (holding that the testimony would be excluded subject to "revisiting if the door is opened"), Ex. E to Def. Case-Specific Mem.; 6/16/14 Transcript in *Davis v. R.J. Reynolds Tobacco Co.*, No. 09-cv-1147, Ex. F to Def. Case-Specific Mem. In *Burkhart*, the trial court later allowed Dr. Burns' testimony. *See* 5/19/14 Trial Transcript, Docket No. 122 in *Burkhart*, at 59-64. The court permitted the evidence after defendants, on cross-examination, went through years of progressively more recent Surgeon General's Reports that gave the impression that the risk of disease from cigarettes had lessened over time. Because the 2014 Surgeon General's Report included Dr. Burns' opinion that cigarettes had become more dangerous with respect to adenocarcinoma, this evidence was allowed on re-

-14-

insufficient to permit Dr. Burns' testimony regarding cigarette design and the

increased risk of adenocarcinoma.

### C.   Defendants' Motion to Exclude Certain Testimony of Plaintiff's Expert Neil Grunberg, Ph.D.

Dr. Neil Grunberg has testified in a number of tobacco-related cases

in federal and state courts, including in Florida.[41]  He is not a medical doctor, but

has a doctorate in psychology and has also completed doctoral training in

pharmacology.[42]  He is Professor of Medical and Clinical Psychology, Professor of

Neuroscience, and Professor of Military and Emergency Medicine at the F. Edward

Hebert School of Medicine at the Uniformed Services University of the Health

Sciences in Bethesda, Maryland.[43]

_____

direct with the limiting instruction that the case involved COPD, not cancer. *See id.* at 62-64.

[41]     *See* Plaintiff's Opposition to Defendants' Motion to Exclude Certain Testimony by Plaintiff's Expert Neil Grunberg, Ph.D. ("Pl. Grunberg Opp."), at 1. Counsel for plaintiff filed the same opposition in two other *Engle*-related cases, *Berger v. Philip Morris USA Inc.*, No. 09-cv-14157 ("*Berger*") and *Kerrivan v. R.J. Reynolds Tobacco Co.*, No. 09-cv-13703 ("*Kerrivan*"). In *Berger*, Judge James G. Carr permitted Dr. Grunberg to testify on the two issues discussed in this Memorandum Opinion and Order. *See Berger* Docket No. 72 at 8-9. Defendants' motion is currently pending in *Kerrivan*.

[42]     *See* 6/11/14 Expert Report of Neil E. Grunberg, Ph.D. ("Grunberg Report"), Ex. 1 to Pl. Grunberg Opp., ¶ 2.

[43]     *See id.* ¶ 1.

1.     **"Minimum Effective Dose"**

In his report, Dr. Grunberg states that "there is an effective dose range of nicotine necessary to initiate and sustain addiction."[44]  According to defendants, "[t]his theory, known as the 'minimum effective dose' theory, was invented by plaintiff['s] experts . . . to prove that [d]efendants' cigarettes were defective, and to support a proposition that a safer alternative design would be a cigarette" with lower nicotine levels than the minimum effective dose.[45]  Defendants argue that Dr. Grunberg should not be permitted to testify concerning this theory because he has no expertise in pharmacology, the testimony is speculative and unreliable due to "analytical flaws," and the theory is irrelevant and "highly prejudicial."[46]

After a careful review of Dr. Grunberg's education, professional qualifications, and professional work, I find that he is qualified to opine on addiction and the minimum effective dose of nicotine.  For example, Dr. Grunberg "wrote his doctoral dissertation on the effects of nicotine on the brain, and then, as the Scientific Editor of the 1988 Surgeon General's Report on Nicotine Addiction,

---

[44]     *Id.* ¶ 88.

[45]     Defendants' Motion to Exclude Certain Testimony of Plaintiff's Expert Neil Grunberg, Ph.D. ("Def. Grunberg Mem."), at 3 (citing Grunberg Report ¶¶ 88-131).

[46]     *Id.* at 4. *Accord id.* at 4-8.

spent years studying and compiling research to determine why people smoke,"[47] and has published extensively on nicotine addiction.[48]  His education and professional work also includes pharmacology, particularly with respect to the effects of nicotine.[49]  Finally, defendants' contentions regarding methodology, relevance, and prejudice all go to the weight, not the admissibility, of Dr. Grunberg's opinion.[50]

## 2.    Cigarette Advertising and Marketing

Dr. Grunberg offers several opinions regarding defendants' marketing strategies and the effects of cigarette advertisements on the public, including adolescents.[51]  Defendants argue that such testimony should be excluded because

---

[47]     Pl. Grunberg Opp. at 3.

[48]     *See generally Curriculum Vitae* of Neil Everett Grunberg, Ex. 5 to Pl. Grunberg Opp.

[49]     *See* Pl. Grunberg Opp. at 4 n.3 & n. 4 (listing publications).  As plaintiff notes, "[t]he specialized knowledge necessary for expert testimony may be derived from experience, as well as from education or training." *Id.* at 3 (citing Fed. R. Evid. 702; *Kumho Tire Co.*, 526 U.S. at 147).

[50]     *See Berger* Docket No. 72 at 8.

[51]     *See, e.g.*, Grunberg Report ¶¶ 16(j) ("Defendants' cigarettes with varying reported nicotine deliveries remain dangerous, and in fact, some are even more dangerous, because Defendants cultivated a perception among the public and the public health community that filtered, light and 'low' yield cigarettes were a safer alternative"), 16(l) ("Defendants' advertising affects cigarette use in adolescents").

Dr. Grunberg "concedes that he is not an expert in marketing or advertising" or on "consumer awareness issues or consumer acceptability."[52]

After careful review of Dr. Grunberg's education, professional qualifications, and professional work, I find that he is qualified to testify concerning cigarette advertising and marketing. "As a trained social psychologist who studies tobacco use and addiction, Dr. Grunberg . . . possesses expertise on the social forces that influence a smoker's tobacco use."[53]  In addition, Dr. Grunberg's past and current experience includes work on campaigns to prevent smoking.[54] Such testimony will be "subject to objections sustained at trial, this Court's prior evidentiary Orders, and Master Docket evidentiary rulings."[55]

## IV.   CONCLUSION

For the foregoing reasons, plaintiff's motion to exclude evidence that

---

[52]    Def. Grunberg Mem. at 14 (citations omitted).

[53]    Pl. Grunberg Opp. at 16.  As explained by Dr. Grunberg, "one of my areas of concentration was social psychology, which includes attitude formation change and how to influence other people."  8/7/14 Grunberg Deposition ("Grunberg Dep."), Ex. 6 to Pl. Grunberg Opp., at 472.

[54]    See Pl. Grunberg Opp. at 16 (noting that in the past Dr. Grunberg served as scientific director and chair of the Robert Wood Johnson Foundation's Youth Tobacco Prevention Initiative and worked as a scientific consultant for a public health marketing campaign relating to cigarettes); Grunberg Dep. at 474-475 (same).

[55]    *Berger* Docket No. 72 at 9.

she smoked cigarettes manufactured by non-parties is DENIED; defendants'

motion to exclude Dr. Burns' testimony regarding cigarette design and the

increased risk of adenocarcinoma is GRANTED; and defendants' motion to

preclude Dr. Grunberg's testimony regarding "minimum effective dose" and

cigarette advertising is DENIED.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:          New York, New York
                September 19, 2014

## -Appearances-

**For Plaintiff:**

Charlie Easa Farah, Jr., Esq.
Farah & Farah, PA
3rd Floor
10 W Adams St
Jacksonville, FL 32202

Janna B. McNicholas, Esq.
Norwood Sherman Wilner, Esq.
Richard J. Lantinberg, Esq.
Stephanie J. Hartley, Esq.
The Wilner Firm, PA
2nd Floor
444 E Duval St
Jacksonville, FL 32202

Kenneth S. Byrd, Esq.
John T. Spragens, Esq.
Kathryn E. Barnett, Esq.
Lieff, Cabraser, Heimann & Bernstein, LLP
Suite 1650
150 Fourth Ave N
Nashville, TN 37219

Martin D. Quinones, Esq.
Todd A. Walburg, Esq.
Robert J. Nelson, Esq.
Sarah R. London, Esq.
Lieff, Cabraser, Heimann & Bernstein, LLP
275 Battery St
29th Fl.
San Francisco, CA 94111

**For Defendant R.J. Reynolds:**

David M. Monde, Esq.
John F. Yarber, Esq.
Stephanie E. Parker, Esq.
Jones Day
Suite 800
1420 Peachtree St NE
Atlanta, GA 30309

David Clifford Reeves, Esq.
Jeffrey Alan Yarbrough, Esq.
Joseph W. Prichard , Jr., Esq.
Robert B. Parrish, Esq.
Moseley, Prichard, Parrish, Knight & Jones
Suite 200
501 W Bay St
Jacksonville, FL 32202

James B. Murphy , Jr., Esq.
Terri L. Parker, Esq.
Shook, Hardy & Bacon, LLP
Suite 2900
100 N Tampa St
Tampa, FL 33602

Joshua Reuben Brown, Esq.
Greenberg Traurig, LLP
450 S Orange Ave - Ste 650
PO Box 4923
Orlando, FL 32802-4923

**For Defendant Philip Morris:**

Keri L. Arnold, Esq.
Arnold & Porter, LLP
34th Floor
399 Park Ave

New York, NY 10022

M. Sean Laane, Esq.
Judith Bernstein-Gaeta, Esq.
Maura McGonigle, Esq.
Arnold & Porter, LLP
555 12th St NW
Washington, DC 20004-1206

Nathan D. Foster, Esq.
Arnold & Porter, LLP
Suite 4400
370 Seventeenth St
Denver, CO 80202-1370

**For Defendant Lorillard Tobacco:**

Aviva L. Wernick, Esq.
Rafael Cruz-Alvarez, Esq.
Hughes, Hubbard & Reed, LLP
Suite 2500
201 S Biscayne Blvd
Miami, FL 33131-4332

Gay Tedder, Esq.
Hughes, Hubbard & Reed, LLP
Suite 2000
2345 Grand Blvd
Kansas City, MO 64108

Jeff H. Galloway, Esq.
Robb W. Patryk, Esq.
Theodore V.H. Mayer, Esq.
Hughes, Hubbard & Reed
One Battery Park Plaza
New York, NY 10004

Wilfred P. Coronato, Esq.

Hughes, Hubbard & Reed, LLP
Suite 3601
101 Hudson St
Jersey City, NJ 07302-3910

John Andrew DeVault, III, Esq.
Patrick P. Coll, Esq.
Bedell, Dittmar, DeVault, Pillans & Coxe, PA
The Bedell Bldg
101 E Adams St
Jacksonville, FL 32202

Lorence Jon Bielby, Esq.
Greenberg Traurig, LLP
101 E College Ave
Tallahassee, FL 32301

Stephen L. Saxl, Esq.
Greenberg Traurig, LLP
Metlife Building
200 Park Ave
New York, NY 10166